IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: | : | Chapter Eleven |
| Gateway Access Solutions, Inc. | : | Bankruptcy No.: 5-07-50051RNO |
|     Debtor | : | |
| | : | |
| Gateway Access Solutions, Inc. | : | |
|     Movant | : | |
| vs. | : | Re: Debtor's Motion to Reject an |
| | : | Executory Contract & Respondents' |
| | : | Counter Motion for Adequate |
| Andrew C. Nester, Benjamin C. Steele, | : | Protection & Request for Super Priority |
| David F. Wiesner and Anchor Bay Corp. | : | Status Per 11 U.S.C. § 507(b) |
|     Respondents | : | |

# OPINION[1]

This is a small business Chapter 11 wherein the Debtor moved under 11 U.S.C. § 365 to reject a contract to sell certain FCC licenses to Pegasus Broadband Communications LLC (hereinafter the "Pegasus Contract").[2] The Respondents objected to the rejection of the Pegasus Contract on two grounds: first, that rejecting the contract was not within the provinces of the business judgement rule; and, second, because doing so would compromise Andrew C. Nester's and David F. Wiesner's security interests in the "Lease Conversion Payments from Pegasus Communications, Corporation to Gateway Access Solutions, Inc."[3] The Debtor's request to

---

[1] Drafted with the assistance of law clerk, Kathryn F. Evans Esquire.

[2] The Pegasus Contract was admitted into evidence as Respondents' Exhibit 1. It is essentially an option agreement giving Pegasus the right to purchase certain FCC leases when it wanted, on the terms it wanted. See Respondents' Exhibit 1, ¶5. Additionally, Pegasus retained the right to terminate the contract at any time after August 8, 2006. See Respondents' Exhibit 1, ¶10.1(c).

[3] Respondents' Exhibits 7, 8 and 9 are Straight Notes executed in favor of Nester and Wiesner and constitute the security agreements. Respondents' Exhibit 10 is the UCC-1 Financing Statement perfecting Nester and Wiesner's interests.

-1-

reject the Pegasus Contract was granted at trial.[4]  At that time, the Court took under advisement the Respondents' Counter Motion for Adequate Protection and Super Priority Status to protect any security interest they held in the "lease conversion payments" from the Pegasus Contract. Essentially, at the time of the Chapter 11 filing, the Respondents, Nester and Wiesner, held a narrow contingent security interest in the proceeds from the rejected contract.[5]  The third Respondent, Anchor Bay Corporation, had a perfected security interest in certain of the FCC leases and sought the same remedies as Nester and Wiesner.  For the reasons stated herein the Respondents' Counter Motion for adequate protection is denied.

I.      **Background**

The small business Debtor in this case owns a variety of FCC leases and is in the business of providing broadband data, voice, video and internet access solutions using a combination of licensed and unlicensed radio spectrum and other data technologies.  Testimony was offered during the hearing that the Debtor also intends on selling the FCC leases.

In March of 2005, Anchor Bay Corporation, whose president is Mr. Wiesner, entered into a security agreement to secure a loan to the Debtor in the amount of $250,000.00.  In August of 2005, Andrew Nester, Respondent and former president/CEO, director and secretary of Debtor, negotiated the Pegasus Contract to sell certain FCC leases to Pegasus Communications Corporation  In May and June of 2006, Wiesner entered into a security agreement to secure his personal loans to the Debtor totaling $55,000.00.  Nester also entered into a similar agreement to

---

[4] The Motion to reject the executory contract was granted at trial with findings and conclusions recited orally on the record at the March 28, 2007 hearing pursuant to Federal Rule of Bankruptcy Procedure 7052.

[5] Nester and Wisener's interest is characterized as contingent given the one-sided nature of the Pegasus Contract whereby, as discussed earlier, Pegasus had no obligation to follow through with the purchase of the leases, and no repercussions for failing to follow through with the purchases.

-2-

loan the Debtor $43,000.00 in May of 2006. All of the aforementioned security agreements were perfected on June 16, 2006. The UCC-1 executed in favor of Anchor Bay listed as collateral certain of the underlying FCC leases. The UCC-1 executed in favor of Nester and Wiesner listed as collateral "First Priority Against Lease Conversion Payments from Pegasus Communications, Corporation to Gateway Access Solutions, Inc." On June 23, 2006, Nester and Wisener resigned from the Debtor's Board of Directors. At trial, all the underlying security agreements and UCC-1 documents were admitted into evidence.

**II.     Jurisdiction**

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 157 and § 1334 as the issues presented herein are core proceedings pursuant to 28 U.S.C. § 157(K) and (O).

**III.    The Affect of 11 U.S.C. § 552 on Nester and Wiesner's Security Interest**

Section 552(a) of the Bankruptcy Code provides:

> Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case. 11 U.S.C. § 552(a).

This subsection essentially stands for the legal proposition that any security agreement entered into by the debtor and another entity pre-petition does not encumber any property received by the debtor post petition. 11 U.S.C. § 552, see also *In re Kizis,* 238 B.R. 89, 93 (Bankr. M.D.Pa. 1999). However, subsection (b) includes an exception to this rule. See *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 374, 108 S.Ct. 626, 632, 98 L.Ed.2d 740 (1988). Section 552(b) allows a security interest to remain in effect:

> . . . if the security interest created by such security agreement extends to the property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property, then such security

-3-

> interest extends to such proceeds, products, offspring, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law. . . . 11 U.S.C. § 552(b).

Clearly, the language in the security instruments at issue herein do not specifically denote an extension to proceeds, products, offspring or profits of the lease conversion payments; therefore, the next step is to examine "applicable nonbankruptcy law" to determine whether, under Pennsylvania law, the future proceeds from a contract would be included within the gambit of the existing collateral covered by the security instruments. *In re Intergrated Testing Products Corp.*, 69 B.R. 901, 903 (D.N.J. 1987).

The applicable non-bankruptcy law in this case can be found at 13 Pa.C.S.A. § 9203(f) which states in pertinent part:

> (f) Proceeds and supporting obligations.- -The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by section 9315 (relating to secured party's rights on disposition of collateral and in proceeds) and is also attachment of a security interest in a supporting obligation for the collateral. 13 Pa.C.S.A. § 9203(f) (2001).

Section 13 Pa.C.S.A. § 9315(a) reads:

> (1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien; and
> (2) a security interest attaches to any identifiable proceeds of collateral. 13 Pa.C.S.A. § 9315(a) (2001).

Therefore, under applicable non-bankruptcy law, Nester and Wiesner's security interests would extend to any post-petition Lease Conversion Payments from the Pegasus Contract, and Nester and Wiesner's security interests are encompassed by § 552(b), exception to § 552(a).

Debtor argues that even if the Respondents' security interests are within the gambit of the § 552(b) exception, they are still not entitled to adequate protection given that they failed to

prove the underlying validity of the security interest under 11 U.S.C. § 363(p)(2). Section 363(p)(2) reads: "In any hearing under this section– . . . (2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest." As noted above, the security agreements and accompanying UCC-1 financing statements were introduced and admitted into evidence at the hearing, despite objections by the Movants. (Audio Record of 3/28/07 at 1:03-1:04 p.m.). The Court maintains the propriety of its original bench ruling and thus, for purposes of adjudicating the instant Motion only, the Court will assume the validity of the security instruments and the underlying debt they secure. Having determined the Respondents' security interest survives § 552, the next question becomes are the Respondents, Nester and Wiesner, entitled to adequate protection under § 363(e)?

**IV.     Respondents Request for Adequate Protection Under § 363(e)**

> Adequate protection may be provided:
>
> . . . on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. . . .  11 U.S.C. § 363(e).

There are two major problems with the request for adequate protection as it pertains to Nester and Wiesner. First, their "property interests" are not being "used, sold or leased." Second, the Court's earlier rejection of the Pegasus Contract essentially depreciated the value of their collateral to zero, obviating the need to make adequate protection payments on a claim with a value of nothing.

With regard to the first problem, in order to qualify for adequate protection, a party must establish that its property is being used, sold or leased or at least that there is a proposal to use, sell or lease the property. *See* 11 U.S.C. § 363(e). Here the "property" at issue is Nester and

-5-

Wiesner's contingent interest in the lease conversion payments from the Pegasus Contract. Here, the Debtor is not seeking to "use" the proceeds from the Pegasus Contract, nor are they seeking to "sell or lease" the proceeds of the Contract. In other words, the rejection does not "use" the Respondents' contingent right to proceeds, it essentially just renders it valueless.

Rejection of a contract is often viewed as a breach of contract. The instant situation is akin to a creditor taking a security interest in cow A's milk, only to have cow A get sick, becoming barren. The hypothetical creditor would still have his security interest in the milk, but the interest would not be worth anything as cow A will never again produce milk. Ultimately, the Court's decision hinges on the fact that § 363(e) was not intended to protect creditors who unwisely choose very narrow property interests to secure their liens. The drastic effect of the rejection of the Pegasus Contract on Respondents, Nester and Wiesner's, security interests could have been avoided by different loan document drafting. The Court must, of course, take the facts as it finds them.

Respondents assert the rejection of the Pegasus Contract constituted a Fifth Amendment taking of their security interest. The Court did not "take" the Respondents' interest. Their interest is still fully intact, however, it has just depreciated to a value of zero. Furthermore, depreciation of a secured creditor's security interest in the context of a bankruptcy is not an unheard of event. There are many instances wherein the Bankruptcy Code compromises a secured creditor's interest in order to ensure the debtor has a fresh start. For example, § 522(f)(1)(B) provides for the avoidance of a non-purchase money security interest, and § 506 allows the Court to determine the value, if any, of a putative secured claim.

-6-

The Respondents argue their security interest should be transferred and attached to the proceeds of any future contract the Debtor enters into for the sale of FCC leases. The Court finds cogent the fact it was the Respondents, Nester and Wiesner, who drafted both the Anchor Bay Corporation security agreements,[6] which had a broad collateral base, and their own security agreements which had narrow collateral bases.[7] As the drafters of both agreements, the Court assumes Nester and Wiesner understood the risks and repercussions involved in choosing such narrow collateral to secure their personal loans. It is not the duty of this Court to protect creditors from themselves when they risk limiting their collateral to contingent interests. Therefore, the Court will deny the Respondents' request to transfer their security interest from the proceeds of the Pegasus Contract to the proceeds of any future contract the Debtor may enter into to sell FCC leases.

**V.     Respondents are Seeking a Super Priority Pursuant to § 507(b) in the Event They are not Entitled to Adequate Protection Under § 363(e).**

The Respondents argue that "[t]he intended application of Section 507(b) is to act as a catchall where adequate protection otherwise fails", and failure to qualify for protection under § 363(e) entitles them to a super priority under § 507(b). See Respondents' Brief, Doc. 106 at pg 16.

---

[6]Respondents' Exhibit 6, the Promissory Note between Gateway and Anchor Bay Corporation listing a security interest in certain leases held by Gateway Access Solutions was signed by David Wiesner on behalf of Anchor Bay Corporation and Andrew Nester on behalf of Gateway Access Solutions, Inc. on March 12, 2005. See Respondents' Exhibit 6 at pg 8.

[7]The underlying security agreements in this case were three "Straight Notes" secured by "First Priority Against Lease Conversion Payments from Pegasus Communications, Corporation To Gateway Access Solutions, Inc." See Respondents' Exhibits 7-9.

Section 507(b) provides:

> If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

When interpreting a statute, the Court must always look first to the plain language of the statute, as there is "no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes." *In re Paret*, 347 BR 12, 14-15 (Bankr. D.Del. 2006) (quoting *U.S. v Am Trucking Ass'n*, 310 US 534, 543, 60 S.Ct. 1059, 84 L.Ed 1345, (1940)). It is evident from the first sentence of § 507(b) that a prerequisite to super priority status is a prior entitlement to adequate protection. As established above, the Respondents, Nester and Wiesner, are not entitled to adequate protection of their contingent interest in the proceeds of the rejected Pegasus Contract given that their interests are not being used, sold or leased and given that there is currently no value in the interest to adequately protect. Failure to qualify for adequate protection under § 363(e) does not entitle a party with valueless security interest to some form of super priority payment. The intention of § 507(b) was not to remedy the situation presented herein. Thus, the Respondents' request for super priority status is denied.

**VI.     Adequate Protection or Super Priority for Anchor Bay Corporation**

As discussed above, the Debtor's Motion to reject the Pegasus Contract was not a request to use, sell, or lease any of the underlying leases Anchor Bay has a security interest in. As such, the Court finds any request for adequate protection or super priority by Anchor Bay Corporation is premature.

-8-

**VII. Conclusion**

In conclusion, the case at bar is not the conventional adequate protection situation where a debtor is "using" a secured creditor's tangible, depreciating collateral. Nester and Wiesner assumed the risk that their narrow contingent security interest could become valueless. Their request for adequate protection and administrative priority claims are denied. Anchor Bay Corporation's request for adequate protection is denied without prejudice as being premature at this time.

An order will be entered consistent with this Opinion.

Date: May 17, 2007

_____
Robert N. Opel, II, Bankruptcy Judge
*This opinion is electronically signed and filed on the same date.* (BI)